## CHARLES W. MANSFIELD vs. BENJAMIN F. DYER.

Norfolk. March 17. — Sept. 7, 1882. ENDICOTT & DEVENS, JJ., absent.

If a person conveys, in fraud of his creditors, land subject to a mortgage, and the grantee, although he does not assume the mortgage debt, pays the mortgage, which is discharged on the record, and then conveys the land to a third person, and afterwards a judgment creditor of the first grantor levies upon the land by a sale of it as an equity of redemption, the payment and discharge will not be treated as an assignment of the mortgage, such not being the intention of the parties to the transaction, but, under the St. of 1874, c. 188, the levy is void, and the purchaser at the sale cannot maintain a writ of entry to recover possession of the land.

An officer's return on an execution recited that, on November 8, 1877, he seized and took all the right in equity or otherwise which the judgment debtor had, on the day when the same was attached on mesne process, of redeeming a certain parcel of real estate; that such seizure was made by posting up a notice stating the time and place appointed by him for the sale, at his office in a certain town, on December 22, 1877, at four o'clock· in the afternoon, said notice being dated November 8, 1877, in the post-office in an adjoining town to that in which the land was situated, and on the 20th of said November, being thirty days before the time appointed for said sale, he gave a notice in writing in hand to said judgment debtor of the time and place appointed for the sale, and on the same day posted like notices in a certain store in the town of B. where the land was situated, and at the post-office in another adjoining town, and caused a like notice to be published in a newspaper in the county, once a week for three successive weeks; that on December 22, 1877, at his office, being the time and place appointed for the sale, he offered the land for sale by public auction, and, · as there was no bid for the same, adjourned the sale for one week, at the same place and hour, at which time and place he sold the right in equity (or other-wise) said judgment debtor had, " at the aforesaid time," in and to the land described. *Held*, that the true construction of the return was that the officer sold an equity of redemption, and that the notices required by law were given.

If land subject to a mortgage is levied on as having been conveyed by the judgment debtor in fraud of creditors, by a sale of it as an equity of redemption, it is no objection to the validity of the levy that the mortgage covered another parcel of land conveyed by the debtor to a different grantee.

WRIT OF ENTRY, in two counts, to recover two parcels of land in Braintree. Plea, *nul disseisin*. After the former decision, reported 131 Mass. 200, the case was tried in the Superior Court, before *Colburn*, J., who allowed a bill of exceptions, which, so far as material to the points decided, was in substance as follows:

The demandant claimed title to the two parcels of land by virtue of a special attachment, made on September 13, 1875, on a writ in which he was the plaintiff and Warren Mansfield

the defendant, a levy, on an execution issued in that action, made November 8, 1877, and sheriff's deeds given December 29, 1877.

Warren Mansfield, the judgment debtor, on August 26, 1872, conveyed the parcels in controversy, with other lands, to Edward Potter. At the time the deed was given, the first parcel was subject to a mortgage for $3500, which was paid by Potter, and discharged of record on October 15, 1872. The second parcel, known as the Pond lot, was, at the time of the conveyance to Potter, subject to a mortgage for $1392, given by Mansfield on this lot and on another lot which he had, prior to the conveyance to Potter, sold to one Safford. Both of these lots were sold subject to this mortgage, which was still outstanding in 1880.

Potter conveyed to various persons portions of the first lot of land, and on June 26, 1874, conveyed the residue of it to the tenant, being the first parcel now in controversy, and also conveyed to him the whole of the second lot.

The officer's return, as amended, on the execution, so far as relates to the seizure and the notices, set forth that on November 8, 1877, he " seized and took all the right in equity or otherwise, which the within named Warren Mansfield had on September 13, 1875, the time when the same was attached on mesne process, of redeeming the following described real estate." Then followed a description of the land. " Said seizure being made by posting up a notice stating the time and place appointed and designated by me for selling said real estate, viz.: At my office in Weymouth, in the county of Norfolk, on Saturday, the twenty-second day of December next, at four o'clock in the afternoon, said notice being dated November 8, 1877, and containing a description of said real estate, in the post-office, a public place in the town of Weymouth, one of the towns in said county of Norfolk adjoining the town of Braintree aforesaid. And on the twentieth day of said November, being thirty days before the time appointed for said sale, I gave notice in writing in hand to said Warren Mansfield, of the time and place appointed for said sale, said notice containing a description of said lands, and on the same day I posted like notices at the store of Bates and Bowditch, a public place in said Braintree, the town

in which said land lies, and at the post-office, a public place in the town of Quincy, another town in said county adjoining said town of Braintree, and caused a like notice to be published once a week for three weeks successively before the time appointed for said sale in the Quincy Patriot, a public newspaper published at said Quincy, in said county of Norfolk."

The return also recited that the officer, on December 22, 1877, at four o'clock in the afternoon, at his office in Weymouth, being the time and place appointed for said sale, offered the first lot for sale by public auction, and as no one made a bid for the same, he, deeming it expedient and for the best interest of all concerned, adjourned said sale by giving public proclamation of the same, for one week, namely, to the 29th of said December, at the same time of day and place, at which time and place he sold the right in equity (or otherwise) said Warren Mansfield had "at the aforesaid time" in and to the lots described, &c.

The demandant offered to prove that the deed from Warren Mansfield to Potter was given in fraud of Mansfield's creditors, and that the tenant, when he took his conveyance from Potter, had notice of the fraud.

The judge ruled that the attachment, levy and sale gave the demandant no title on which he could maintain this action ; and directed a verdict for the tenant, which was rendered. · At the request of the demandant, the judge reported the case for the determination of this court.

*E. Avery,* (*G. M. Hobbs* with him,) for the demandant.

*R. D. Smith & J. M. Baker,* for the tenant, contended, among other things, as to the second parcel, that it could not be determined from the return of the officer whether he did what he should have done, or only recited this in his notice, or whether the land was to be sold at his own office or at the post-office, or whether the words "at the aforesaid time" referred to the time of the attachment, the time of the levy, the time of the notice, the time of the sale, or the time to which the sale was adjourned.

W. ALLEN, J. The levy upon the first parcel of land demanded in the writ was by a sale of the equity of redemption. If the land was not subject to the mortgage, the sale was void. The only authority for levying by a sale, if there was no

mortgage upon the estate, was by the St. of 1874, *c.* 188, and that does not authorize an estate free from mortgage to be levied upon and sold as an equity of redemption. *Hackett* v. *Buck*, 128 Mass. 369. The validity of the levy upon that parcel depends then, in the first place, upon whether there was a mortgage upon it at the time of the levy. That parcel was conveyed by Mansfield, the judgment debtor, to Potter, and by Potter to the tenant; the demandant offered to prove that both conveyances were in fraud of Mansfield's creditors. At the time of the conveyance to Potter, there was a mortgage upon the land, but it does not appear that it was put upon it by Mansfield, or that he was under any personal obligation to pay the debt, and it does not appear that Potter assumed the debt. The mortgage was paid by Potter, and was discharged on the record before his conveyance to the tenant. The attachment and the levy of the execution by a creditor of Mansfield were both after the conveyance to the tenant, who took the same right that Potter had, and no greater.

Before the payment and discharge of the mortgage, the interest in Potter's hands, liable to attachment by creditors of Mansfield, was an equity of redemption; and the demandant contends that, as the payment was not made by Mansfield, or by any person under obligation to him to make it, it cannot enure to his benefit or that of his creditors, and that, to prevent that consequence, the transaction will be treated as an assignment, and not as a discharge, of the mortgage. It may be that, if there had been an assignment of the mortgage in form, or if the parties had intended that it should have been assigned and kept alive, these considerations would have prevented a merger of the two estates in Potter, and the mortgage would have been kept alive. *Tucker* v. *Crowley*, 127 Mass. 400, and cases cited. But there was no assignment in form, and the parties did not intend that the mortgage should be kept alive, but intended that it should be discharged.

In *Crosby* v. *Taylor*, 15 Gray, 64, the fraudulent grantee of a mortgagor put in evidence a quitclaim deed to him from the mortgagee of all his right, title and interest in the premises, which contained also these words after the descriptive part: " which said mortgage is hereby cancelled and discharged, the

said Adams [the mortgagor] having recently conveyed his interest in said premises to said Taylor." It was held that this was an assignment of the mortgage, and that there was no merger. Chief Justice Shaw said: "We are of opinion that this instrument was, under the circumstances, a good assignment. The words 'cancelled and discharged' are controlled by the statement that the grantee had recently acquired the equity of redemption. If the conveyance of the equity had been good, the mortgage assigned and the equity of redemption would have merged; but if the creditors interfere and take the equity, then there is no merger, and the equity and the mortgage are still distinct." It will be observed that no evidence was offered as to when or by whom the debt was paid.

In *Eaton* v. *Simonds*, 14 Pick. 98, it was agreed, between the purchaser of an equity of redemption sold on execution and the mortgagee, that the latter should assign the mortgage to the former. The purchaser paid the amount of the debt and asked for an assignment. The mortgagee said an assignment would be unnecessary, and discharged the mortgage upon the record. Afterwards the mortgagor died, and it was held that his widow, who had released her dower in the mortgage deed, was entitled to dower in the land. Mr. Justice Wilde said, " The general principle is, that when the purchaser of a right to redeem takes an assignment, this shall or shall not operate as an extinguishment of the mortgage, according as the interest of the party taking the assignment may be, and according to the real intent of the parties." " In the present case, however, the doctrine of merger is not applicable, for the estate in the mortgage of William Eaton was never assigned to the defendant, and never vested in him; so that it could not unite with the equitable title in him, so as to operate as a merger. But this mortgage has been legally discharged, the debt has been paid, and can no longer be set up as a subsisting title, either at law or in equity."

In *Wadsworth* v. *Williams*, 100 Mass. 126, a mortgagor conveyed to the judgment debtor by a quitclaim deed with covenants against all persons claiming under her. The grantee mortgaged the land and afterwards reconveyed to the mortgagor by a warranty deed, excepting from the warranty the two mortgages.

Afterwards the assignee of the mortgages, having received payment of the mortgage debts, gave to the mortgagor a quitclaim deed of the land, with a special covenant of warranty against all persons claiming under him, and against the first mortgage. It was held that this deed took effect as a discharge, and not as an assignment, of the mortgages, for the reason that the mortgagor, by force of her covenant in her deed to the judgment debtor, was bound to extinguish the mortgages, and was under the same obligation to his judgment creditors. The reconveyance from him to the mortgagor was said to be a nullity as to the judgment creditor, and he was entitled to the benefit of the covenants contained in the deed to the debtor.

In *Perry* v. *Hayward*, 12 Cush. 344, a mortgagor, by a deed fraudulent as to creditors, quitclaimed the mortgaged premises to the plaintiff, covenanting against all persons claiming under himself. The mortgagee subsequently, on payment of the mortgage debt by the plaintiff, released to him by deed of quitclaim all interest in the premises. Afterwards the premises were seized and sold, as an equity of redemption, on an execution against the mortgagor. It was held that the levy was void, because the estate was not mortgaged, and the land should have been set off; that, by the payment and release, the estate of the mortgagor was made absolute either in the mortgagor or the plaintiff. Chief Justice Shaw (apparently assuming that the attachment was prior to the discharge of the mortgage, which is immaterial) said, " It appears that whatever interest Nathan Perry [the mortgagor] had in the estate, or whatever his creditors had at the time of the attachment, in consequence of any conveyance of his, fraudulent as against them, the mortgage had been paid and discharged, and the estate had become absolute either in Nathan or William Perry [the plaintiff] before the execution was levied, so that whatever right the execution creditor had, to make that estate available to the payment of Nathan Perry's debt to him, was a right to levy on it specifically, not to sell the supposed equity of redemption." It will be observed that this case differs from *Wadsworth* v. *Williams*, last cited, and resembles the case at bar in that the fraudulent grantee was under no covenant or obligation to pay the debt.

.　In the case at bar, the mortgage was paid by a person having an interest to pay it, and the mortgage was discharged. This was all that was intended by the parties. The mortgagee did not intend to assign the mortgage. The instrument which he executed was not an instrument of assignment; it was not a deed. It was an acknowledgment of satisfaction of the mortgage, which, by the provision of the statute, had the same effect as a deed of release. Gen. Sts. c. 89, § 30. A release of the mortgage must operate to enlarge the estate of the mortgagor by adding the legal estate to the equitable interest. As the conveyance from Mansfield to Potter was void as to the demandant in this action, as to him the estate of the mortgagor remained in Mansfield, and he was the owner of the equity of redemption when, by the effect of the satisfaction of the mortgage and the acknowledgment of it upon the record, the mortgage deed became void, and the equitable changed into a legal estate. This is not a proceeding in equity to reform the instrument or to compel a new one. There was no mortgage upon the land at the time of the levy of the demandant's execution, and the levy, being by a sale of an equity of redemption, was void.

As to the second parcel of land demanded, the Pond lot, we think that the objections to the levy cannot be sustained. We construe the officer's return to mean, though the meaning is not clear, that it was sold as an equity of redemption, and that the notices required by law were given.

The principal objection to the levy is, that the mortgage covered other land than that levied on and sold. Mansfield mortgaged a parcel of land. He conveyed part of it, subject to the mortgage, to Safford, and the remaining part, also subject to the mortgage, to Potter, who conveyed to the tenant. The levy was upon the part sold to Potter. The purchaser takes whatever right Mansfield had to redeem it. The demandant and Mansfield, whom he represents, cannot complain, if the right to redeem a part of the mortgaged premises, by paying the whole mortgage, was sold, because Mansfield's act in dividing the property rendered it necessary. To hold otherwise would enable a mortgagor, by selling to a *bona fide* purchaser a portion of mortgaged premises, to put the rest beyond the reach of his creditors. Mansfield, by his own act, held the right to redeem the

land levied upon, by paying the whole debt, and that was the only right which could be sold on the execution. *Webster* v. *Foster*, 15 Gray, 31. Whether Mansfield or the purchaser at the execution sale could have any right of contribution, upon paying the debt, against the owner of the equity in the other parcel of the Pond lot, it is not necessary to consider.

It is immaterial whether the attachment was void or not. The condition of the property was not changed between the time of the attachment and levy. The result is, that the verdict for the tenant upon the first count is to stand, and the verdict upon the second count is to be set aside, and

*A new trial had.*